Edward E. McKIMM and Doris D. McKimm, Appellees,

v.

Mary M. BELL, Defendant.

Appeal of ALLSTATE INSURANCE COMPANY.

Supreme Court of Tennessee, at Jackson.

April 2, 1990.

Rehearing Denied May 29, 1990.

Jill Menuskin Steinberg, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for appellant.

Alan Bryant Chambers, Memphis, for appellees.

## OPINION

COOPER, Justice.

This is an action to recover damages under the uninsured motorist provisions of an automobile liability policy issued Edward E. McKimm and wife, Doris McKimm, by Allstate Insurance Company. The trial court found that the plaintiffs' delay in giving notice of their claim was excusable, but held that their subsequent failure to supply various items of proof requested by Allstate amounted to a failure of cooperation, and dismissed plaintiffs' action. A divided Court of Appeals reversed the judgment of the trial court and entered judgment declaring that plaintiffs were "entitled to the uninsured motorist coverage provided by the Allstate policy." In doing so the court agreed with the trial court's finding that the delay in giving notice of claim was excusable. The majority also held that the "proof of claim" provisions of the policy were not conditions precedent to uninsured motorist coverage, and, if so, would be in conflict with the uninsured motorist statute in that they restrict the insureds' right to pursue and prove their claim against Allstate. We disagree with these latter conclusions by the Court of Appeals, but do concur in the holding that plaintiffs' claim is covered under the uninsured motorist provisions of the policy issued by Allstate.

Insurance contracts are subject to the same rules of construction and enforcement as apply to contracts generally. *See Draper v. Great American Insurance Company,* 224 Tenn. 552, 458 S.W.2d 428 (1970).

Section II of the automobile liability insurance policy issued the McKimms by Allstate provides protection against bodily injury and optional property damage by uninsured automobiles. Key provisions of the policy, under the heading "Conditions" provide that:

3. *Proof of Claim.* As soon as practicable, the insured or other person making claim shall give to Allstate written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The insured and every other person making claim hereunder shall submit to examinations under oath by any person named by Allstate and subscribe the same, as often as may reasonably be required....

The injured person shall submit to physical examinations by physicians selected by Allstate when and as often as Allstate may reasonably require and he, ... shall upon each request from Allstate execute authorization to enable Allstate to obtain medical reports and copies of records. The insured or other person making claim for damage to property shall file proof of loss with Allstate within sixty days after the occurrence of loss, unless such time is extended in writing by Allstate, in the form of a sworn statement setting forth the interest of the insured and all others of the property affected, and encumbrances thereon, the actual cash value thereof at time of loss, the amount, place, time and cause of such loss, and the description and amounts of all other insurance covering such property. Upon Allstate's request, the insured shall exhibit the damaged property to Allstate.

4. *Assistance and Cooperation of the Insured.* After notice of claim under this coverage, Allstate may require the insured to take such action as may be necessary or appropriate to preserve his right to recover damages from any per-

son or organization alleged to be legally responsible for the bodily injury or property damage; and in any action against Allstate, Allstate may require the insured to join such person or organization as a party defendant.

\*   \*   \*   \*   \*   \*

10.  *Action against Allstate.*  No action shall lie against Allstate unless, as a condition precedent thereto, the insured or his legal representative has fully complied with all the terms of this coverage.

We see no conflict in the above conditions to coverage, and the expressed intent of the legislature that automobile liability insurance carriers must make uninsured motorist coverage available to every insured in this state, or with the expressed intent that the courts of this state be open for prosecution of uninsured motorist claims without the necessity of first submitting the claim to arbitration.  *See* T.C.A. §§ 56–7–1201 and 56–7–1206.  Most courts have recognized the validity of conditions precedent to uninsured motorist coverage, such as those set out above. *See,* for example, *Temple v. State Farm Ins. Co.,* 548 S.W.2d 838 (Ky.1977); *Frager v. Pennsylvania Gen. Ins. Co.,* 161 Conn. 472, 289 A.2d 896 (1971); *Martinson v. American Family Mut. Ins. Co.,* 63 Wis.2d 14, 216 N.W.2d 34 (1974); Couch 2d, Insurance § 45:629; 2 Widiss, *Uninsured and Underinsured Motorist Insurance,* (2d ed. 1981) §§ 16.1–16.6.

In *Hartford Accident and Indemnity Company v. Creasy,* 530 S.W.2d 778 (Tenn. 1975), this Court enforced "a closed-in time limitation governing notice to the insurer" as a condition precedent to coverage.  In our opinion, reasonable conditions regarding proof of claim and cooperation of the insured with the insurer to protect the claim against the party causing the damage are no more repugnant to legislative intent than is the condition that requires the insured to give notice of an accident to the insurer.  The requirements are not onerous, and do not conflict, in any way, with T.C.A. § 56–7–1206, which speaks only to a suit, not to preliminary matters necessary to perfect coverage.

This brings us to the question of whether the plaintiffs sufficiently complied with the policy conditions of notice, proof of loss, and cooperation.  Defendant insists they did not, that notice was too late, that no written proofs of loss were filed, and that the plaintiffs consistently refused to cooperate by failing to execute medical authorization forms on request, and by failing to supply Allstate with evidence of the defendant motorist's uninsured status.

The accident that is the predicate of the uninsured motorist claim occurred on October 1, 1984.  An automobile driven by Mary Bell struck the rear of the automobile driven by Mr. McKimm.  A police officer was called to the scene.  Mrs. Bell told both the officer and Mr. McKimm and his passenger, Sally Tripp, that she had automobile liability insurance coverage under a policy issued through the Jetway Insurance Agency.  The next day, Mrs. Tripp called the Jetway Insurance Agency and verified that Mrs. Bell had been issued an automobile liability insurance policy.  It later turned out that the policy had expired two days before the accident with Mr. McKimm and a new policy was issued Mrs. Bell on the day of the accident, a few hours after the accident had occurred.

In November, 1984, Mr. McKimm retained an attorney to represent him in his claim for personal injuries and property damage.  On or about April 18, 1985, the attorney learned from an adjuster with Memphis Fire Insurance Company that Mrs. Bell had no liability insurance coverage at the time of the accident.  Her policy had expired either on September 28th or 29th, and she had renewed her coverage on October 1, 1984, after the accident.

McKimm's attorney notified Allstate on April 22, 1985, by telephone of his clients' potential uninsured motorist claim.  The telephone notice was followed-up by letter, and a copy of the police report of the accident was enclosed.

Allstate responded by sending a reservation of rights letter to Mr. McKimm.  The basis of the reservation of rights was the apparent delay in notifying Allstate of a possible uninsured motorist claim.  Allstate

also instructed Mr. McKimm's attorney to have the insured call to report the accident so that an adjuster employed by Allstate could get full details. Mr. McKimm called Allstate on April 24, 1985, and answered all questions put to him about the accident and his losses. No request was made for the filing of a written proof of claim.

After the telephone interview, several letters passed between Allstate adjuster Dwayne Taylor and the insured's attorney. In these letters Allstate did request (1) an affidavit from the alleged uninsured motorist stating she was uninsured; (2) evidence that the Tennessee Department of Safety had begun license revocation proceedings against the allegedly uninsured motorist; (3) proof of injury; and (4) proof of property damage. Allstate advised Mr. McKimm's attorney in a letter dated August 12, 1985, regarding damages documentation that "Mr. McKimm's policy does (as a condition of coverage) require cooperation and assistance, supplying of medical authorizations, etc., and that lack of these items could jeopardize his coverage." Mr. McKimm's attorney responded by letter dated August 19, 1985, as follows:

Dear Mr. Hayward:

This letter is in response to your letter of August 12, 1985. We do not like your suggestion that we are not cooperating. Why does Allstate always resort to this implication? The reason we have not forwarded medicals is that we do not have them yet. We will give them to you as soon as we have them in....

Allstate did not request that Mr. McKimm submit to a physical examination by a physician of its choice, as is permitted by the policy, but did request medical authorizations be executed by Mr. McKimm. Although not complying with Allstate's request, Mr. McKimm's attorney informed Allstate by letter of August 21, 1985, of McKimm's physical condition and gave Allstate a brief description of the medical treatment being undergone by Mr. McKimm. He also informed Allstate that he did not "expect to have a report from Dr. Ennis (the treating physician) until September 10, 1985." Attention also was called to the fact that the limitation on filing suit against Mrs. Bell would run on October 1, 1985, and that in light of the frequently reasserted positions of noncooperation, counsel knew of no reason why the lawsuit should not be filed.

Two days later, Allstate responded in the following way:

Dear Mr. Chambers:

Thanks for yours of August 21, with the information regarding Mr. McKimm.

Of course, since May 31, 1985 I have requested a discussion of the policy provision (which I furnished to you) without the benefit of any response. Apparently, you have preliminary reports from Dr. Ennis. If not, please have Mr. McKimm execute and return the enclosed medical authorization, and we will assist in obtaining the necessary medical information.

As to the filing of suit, this is up to you. However, efforts to bring this to an amicable disposition may result in savings in time and expense for you and your client, as well as for us.

Looking forward to hearing from you.

On September 30, 1985, one day before the running of the statute of limitation on the claim against Mary Bell, suit was filed in behalf of the McKimms. Process was served on Allstate to preserve the McKimms' claim under the uninsured motorist provisions of the automobile liability policy issued to him by Allstate.

■ Allstate then took the position that plaintiffs had failed to fully comply with conditions precedent under the policy and, as a consequence, they were not afforded uninsured motorist coverage under the policy. The primary basis for this position, and the one consistently urged by Allstate, was that the plaintiffs had failed to give written notice of their uninsured motorist claim "as soon as practicable" as required by the policy. As heretofore noted, both the trial court and the Court of Appeals found that plaintiffs had complied with the notice requirement of the policy. These findings were predicated upon evidence that the responsible party told both the investigating officer, Mr. McKimm, and his

passenger that she had automobile liability insurance coverage under a policy of insurance issued through the Jetway Insurance Agency in Millington, Tennessee. The next day, the passenger in the McKimm automobile verified coverage with the Jetway Insurance Agency. It was not until April 22, 1985, in dealing with an adjuster with the Memphis Fire Insurance Company, that counsel for the McKimms learned that there was one day that Mrs. Bell did not have automobile liability insurance coverage, and that was the day on which the accident with Mr. McKimm occurred. Notice was given almost immediately to Allstate of the possible uninsured motorist claim. In our opinion, the McKimms acted with due diligence under the circumstances and gave notice of the possible uninsured motorist claim "as soon as practicable."

Allstate also insists that the plaintiffs failed to cooperate with Allstate by furnishing proofs of loss, property damage documentation, medical authorization forms, and information on the insurance status of the alleged responsible uninsured motorist.

■ Allstate's noncooperation defense, insofar as it depends on the insured's failure to comply with Allstate's request that the insured procure an affidavit from the uninsured motorist, and submit evidence that the state was proceeding to suspend the license of the uninsured motorist, are without merit. While the burden rests on the plaintiffs to prove that Mary Bell was uninsured at the time she drove her automobile into the rear of the McKimm automobile, there is no policy requirement that the plaintiffs prove the uninsured motorist status of Mrs. Bell in any particular way. The cooperation section of the uninsured motorist policy

> require[s] the insured to take such action as may be necessary or appropriate to preserve his right to recover damages from any person or organization alleged to be legally responsible ... [and to] require the insured to join such person or organization as a party defendant.

Plaintiff preserved his right of recovery against the defendant driver by filing suit within the one-year period under the statute of limitations; and the record does not indicate that any other person or organization is legally responsible for plaintiffs' bodily injury or property damage, or that plaintiffs have prejudiced Allstate's subrogation rights.

■ Allstate further raises the spectre of noncooperation on the part of the plaintiffs by charging that they failed to comply with requirements set forth in the "proof of loss" section of the uninsured motorist policy. In our opinion, plaintiffs acted reasonably under the circumstances and gave the material required information as it became available and was requested. Further, there is no showing that any prejudice resulted to Allstate from the actions, or inaction, of the plaintiffs. It is true that plaintiffs did not submit a written proof of claim; however, Allstate availed itself of the opportunity to interrogate plaintiffs fully concerning the details of the accident, the personal injuries sustained by Mr. McKimm, including particulars of the nature, extent, and treatment of the injuries, the damage to the McKimm automobile, the actual cost of repairs, and plaintiffs' knowledge of the uninsured status of the driver (Mrs. Bell) responsible for the accident. Having availed itself of the opportunity to question Mr. McKimm and get in more detail the information generally set forth in a written proof of loss, Allstate is not now in the position that it can rely on the failure to file written proof of loss as evidence of noncooperation on the part of the plaintiffs.

Allstate also questions the failure of the plaintiffs to submit proof of damages, notably their failure to execute a medical authorization at the request of Allstate and submit medical reports on the condition of Mr. McKimm, or to file with Allstate the check given by Mr. McKimm in payment of car repairs, or to file proof of lost wages. The record is not clear that Allstate even made a specific request either for wage records or for documentation of the property claim. As heretofore pointed out Allstate availed itself of the opportunity to interrogate Mr. McKimm concerning those items of damages. That, in our opinion, obviated the

necessity of plaintiffs doing anything else until time for them to prove their damages.

■ Under the proof of claim "condition" of the uninsured motorist policy, Mr. McKimm was required to "submit to physical examinations by physicians selected by Allstate when and as often as Allstate may reasonably require and he … shall upon each request from Allstate execute authorization to enable Allstate to obtain medical reports and copies of records." Allstate never requested Mr. McKimm to submit to a physical examination. It did request the execution of a general authorization permitting it to obtain medical reports and copies of records relating to the physical condition of Mr. McKimm. Should the failure to execute the general medical authorization form cause forfeiture of plaintiffs' uninsured motorist claim? We think not. We find no indication in the record that plaintiffs intended to deprive Allstate of access to medical information, nor are we made aware of any prejudice that resulted to Allstate by plaintiffs' failure to execute the medical authorization form. To the contrary, plaintiffs, through counsel, informed Allstate by letter dated August 21, 1985, that Mr. McKimm had not yet received a medical report and that he would forward the report to Allstate as soon as it was received. He further informed Allstate that he did not expect to receive the report before September 10, 1985. In response, Allstate requested a medical authorization so that it could assist him in obtaining medical information. Shortly thereafter, because of the running of the limitation on the claim of McKimm against Mrs. Bell and to comply with the contractual provision requiring plaintiffs to take action to recover damages from Mrs. Bell, and thus to protect Allstate's right of subrogation, the present suit was filed. Plaintiffs can not be penalized for filing suit on the last day the claim against Bell was viable, even though no medical authorization form had been submitted to Allstate.

Further, there is a question as to whether the execution of a general medical authorization, such as that requested by Allstate, is called for by the terms of the uninsured motorist policy. Plaintiffs point out that the authorization to obtain medical records is set forth in the *same* sentence as the requirement that plaintiffs submit to physical examinations on request by Allstate, leading to the belief that the medical authorization is to enable Allstate to obtain medical reports of examinations of plaintiffs made at Allstate's request. The sentence is subject to the construction placed on it by the plaintiffs. This apparent ambiguity, when coupled with the fact that no prejudice resulted to Allstate by the failure of the plaintiff to execute a general medical authorization form, would be in our opinion sufficient to defeat any claim of forfeiture of rights of plaintiffs under the uninsured motorist policy, where the claim is based on the failure to execute a medical authorization form before filing suit against the uninsured motorist.

The judgment of the Court of Appeals is affirmed. Costs will be paid by Allstate and its surety. The case is remanded to the trial court for such other proceedings as are necessary.

DROWOTA, C.J., HARBISON and O'BRIEN, JJ., and McLEMORE, Special Justice, concur.

### ORDER

A petition for rehearing has been filed on behalf of defendant/appellant, Allstate Insurance Company. After consideration of the petition and the record, the Court is of the opinion that the petition is without merit. Accordingly the petition is overruled at the cost of petitioner and its surety.

DROWOTA, C.J., HARBISON and O'BRIEN, JJ., and McLEMORE, Special Justice, concur.