68 F.3d 475
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NORTHERN INSURANCE COMPANY OF NEW YORK, Plaintiff-Appellee,
v.
Abdol H. and Ali A. TAGHAVI, Defendants-Appellants.
 No. 94-5498.
 United States Court of Appeals, Sixth Circuit.
 Oct. 11, 1995.
 
 Before: CONTIE, NELSON, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendants in this declaratory judgment action were insured against theft under a policy that entitled the plaintiff insurer to examine any insured party under oath in the event of a loss. After making a suspicious claim of loss by theft, the defendants failed to comply with repeated requests for an examination under oath. Holding that compliance with such requests was a condition precedent to recovery, the district court (Gibbons, J.) granted summary judgment to the insurance company. Upon de novo review, we conclude that the case was decided correctly.
 
 
 2
 * The defendants, Ali and Abdol Taghavi, own and operate an oriental rug store. On October 29, 1992, they advised their insurance carrier, plaintiff Northern Insurance Company, of a break-in. The defendants subsequently submitted a claim for the loss of 46 oriental rugs valued at over $770,000.
 
 
 3
 Northern suspected the claim was inflated or completely fraudulent. The defendants' business premises were protected by security devices of several different types, including infrared motion detectors and "glass break" sound detectors. The sound detectors are triggered by high frequency sound, such as glass breaking, while the motion detectors detect movement through the heat given off by a body. At the time of the alleged break-in, the sound detectors were triggered but the infrared detectors were not. According to the records of the alarm company, the police arrived on the scene six to ten minutes after the break-in. In this period of time, the thieves would have had to remove 46 oriental rugs, some weighing over 300 pounds, through an opening in an aluminum door of standard width and approximately 38 inches in height. There were no marks or scratches on the lower portion of the door frame.
 
 
 4
 On the day the alleged break-in was reported, a claims representative of the insurance company conducted an unsworn tape-recorded telephone conversation with Abdol Taghavi. Two of the company's investigators interviewed Mr. Taghavi again a month later, but did not place him under oath.
 
 
 5
 On three separate occasions between February 18, 1993, and March 25, 1993, the insurance company requested that the Taghavis appear for an examination under oath pursuant to the terms of the policy. The defendants repeatedly refused to attend the scheduled examinations, asserting through counsel that the previous statements had been under oath and requesting that they be supplied with copies of these statements. The insurance company finally denied the claim and instituted the declaratory judgment action.
 
 II
 
 6
 The defendants contend that the policy did not make submission to an examination under oath a condition precedent to policy coverage. Like the district court, we disagree.
 
 
 7
 In addition to a series of "Common Policy Conditions"--conditions common to all of the coverages included in the policy--the policy contains, in the building and personal property coverage part, a section captioned "Loss Conditions." The latter section begins with these words: "The following conditions apply in addition to the Common Policy Conditions...." (Emphasis supplied.) The third of the seven numbered subsections that follow is captioned "Duties in the Event of Loss or Damage." Subsection 3(b) of the "Loss Conditions" section says this:
 
 
 8
 "We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed."
 
 
 9
 The policy unambiguously labels submission to examination under oath a "duty" of the insured in the event of loss, and performance of this duty is clearly said to be a "condition" of policy coverage. The defendants argue that it cannot be a condition precedent because the policy does not use the adjective "precedent." Tennessee law--which is controlling in this diversity case--is to the contrary. See, e.g., McKimm v. Bell, 790 S.W.2d 526, 527-528 (Tenn.1990), construing a policy's proof-of-claim provisions as conditions precedent where such provisions were set forth under the heading "Conditions."
 
 
 10
 The defendants further argue that the insurance company may not deny coverage based upon a failure to submit to examination under oath because the company has not been prejudiced by this failure. The defendants acknowledge that as recently as 1975 the Tennessee Supreme Court reaffirmed the closely-related principle that an insurer need not show prejudice from a late notice. Hartford Accident & Indem. Co. v. Creasy, 530 S.W.2d 778 (Tenn.1975). Nevertheless, the defendants ask us to require a showing of substantial prejudice before coverage can be denied on the basis of a failure to satisfy the type of condition precedent at issue here.
 
 
 11
 In the principal Tennessee case relied upon by the defendants, North River Ins. Co. v. Johnson, 757 S.W.2d 334 (Tenn.App.1988), the insured challenged a denial of coverage due to late notice, arguing that the insurer had not been prejudiced. The North River court observed that other jurisdictions have adopted a prejudice requirement, and stated that the argument for such an approach is "persuasive and its application would be fair and manifestly equitable." Id. at 335. The court noted, however, that it was constrained by the Tennessee Supreme Court's holding in Creasy, so adoption of a prejudice requirement must be left to the state supreme court and the legislature. Id. at 336. The Tennessee Supreme Court denied permission to appeal this ruling.
 
 
 12
 The other case relied upon by the defendants is McKimm v. Bell, supra, where the insureds had failed to comply with a request that they sign medical authorization forms and had not supplied evidence of the uninsured motorist status of the other party in the automobile accident out of which the case arose. 790 S.W.2d at 528. The court ruled for the insureds, finding that they had substantially complied with the policy provisions. Id. While basing its holding on the insureds' substantial compliance, the court noted that the insurer was not prejudiced by any lack of cooperation. Id. at 530-531.
 
 
 13
 The case before us presents a quite different picture. Here, as was not true in McKimm, there is a strong possibility of a fraudulent or inflated claim. In a case of suspected fraud the insurer will often be able to demonstrate prejudice only by fully investigating the claim--exactly what the insured's failure to cooperate has prevented here.
 
 
 14
 Normally, of course, the failure of a contracting party to comply with a condition precedent excuses performance by the other party whether or not prejudice can be shown. If the Tennessee courts are uncomfortable with this long-established principle, we think it most unlikely that they would select as a vehicle for repudiating it a case in which the legitimacy of the insured's claim of loss appears questionable.
 
 
 15
 The defendants attempt to justify their refusal to submit to an examination under oath on the ground that the insurance company refused to supply them with transcripts of their previous unsworn statements. The policy terms do not impose such a requirement, and we decline to rewrite the policy.
 
 
 16
 For the reasons stated, and for those given by the district court in its opinion, the judgment of the district court is AFFIRMED.