# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### JUNE 21, 2006 Session

## SARA JANE DAVIDSON v. TOM DAVIDSON, ET AL.

### Direct Appeal from the Chancery Court for Dyer County
### No. 03C381    J. Steven Stafford, Chancellor

---

### No. W2005-02343-COA-R3-CV - Filed September 25, 2006

---

Husband, a farmer, and wife, a teacher, married in 1992. In 1993 or 1994, they purchased an eighteen acre parcel of real property located in Newbern, Dyer County, Tennessee. In 1995, the couple secured an insurance policy from Tennessee Farmers Mutual Insurance Company through their local Farm Bureau agent. The policy covered husband's farming operation and the house under one policy. In 2001, husband and wife separated. The couple renewed the insurance policy annually, and the most recent renewal was set to expire on February 22, 2003. Prior to the ending date of the policy, and during the couple's separation, the insurance company sent insurance premium notices to a post office box established by Husband. Husband decided not to renew the policy. Accordingly, the insurance company maintained that the policy expired on February 22, 2003 due to the nonpayment of the premium. On May 4, 2003, a tornado severely damaged the home, which the wife occupied at the time. The insurance company refused to cover the damage. The wife subsequently filed a lawsuit against her husband, the insurance company, the local agent, and others. The agent and the insurance company moved for summary judgment, which the trial court granted. We affirm the trial court's grant of summary judgment to the agent. We reverse the trial court's grant of summary judgment to the insurance company, and we hold that a genuine issue of material fact exists as to whether an insurance policy covered the home on the date of the injury complained of.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part & Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Thomas E. Weakley, Dyersburg, TN, for Appellant

James A. Hamilton, Dyersburg, TN, for Appellee

# OPINION

## I.
### FACTUAL BACKGROUND & PROCEDURAL HISTORY

Sara Jane Davidson ("Wife" or "Appellant") and Thomas Larry Davidson ("Husband") married in 1992. At the time of their marriage, Husband was self-employed as a farmer and Wife worked as a teacher. In 1993 or 1994, they purchased an eighteen (18) acre parcel of real property situated in Newbern, Dyer County, Tennessee. When they acquired the land, no house occupied the property. Wife subsequently inherited a house from her mother, which was located in Trimble, Tennessee. Husband and Wife decided to have the home moved onto their Dyer County property, and they began living in the residence thereafter. The address of the home was listed as 921 Williams Street, Newbern, Tennessee.

In April 1995, Husband and Wife contacted their local insurance agent, Randy Brooks ("Mr. Brooks") d/b/a Farm Bureau Insurance, to inquire about securing insurance for the property. As a result of their discussions, Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers Mutual" or collectively with Mr. Brooks the "Appellees") issued a policy to cover the home as well as the farming operation Husband conducted on the property. Initially, the policy period ran from April 1995 until April 1996, being renewable on an annual basis thereafter. According to Husband and Wife, they had a verbal agreement whereby Wife would provide health insurance for the couple through her job and Husband would pay the premiums on the insurance policy covering the house and farming operation.[1]

The couple initially received their mail, including correspondence related to their insurance policy with Tennessee Farmers Mutual, in a mailbox at their residence located at 921 Williams Street. According to Wife, the mailbox was continuously vandalized, therefore, the couple began receiving their mail, including insurance correspondence, at P.O. Box 94, Newbern, Tennessee.

In 1998, Husband and Wife apparently began to experience marital difficulties and decided to separate. That same year, Tennessee Farmers Mutual received a notice, purportedly from Husband and Wife, requesting that the couple's mailing address be changed to P.O. Box 342, Newbern, Tennessee. Husband subsequently admitted that he contacted Tennessee Farmers Mutual after the couple's separation and asked that premium notices be sent to the post office box. Husband also admitted that he obtained the post office box after he and Wife separated, but he maintained that Wife had a key to the box. Wife subsequently denied having any knowledge of the change of address request, knowledge of the existence of the post office box, or access to the post office box. After receiving the notice, Tennessee Farmers Mutual began mailing all correspondence concerning

---

[1] The exact terms of this agreement are subject to some dispute. Husband contended that they agreed that he would pay one-third of the health insurance (his share) and Wife would pay him $35.00 a month for that portion of the insurance policy covering the house, which the parties apparently agreed was Wife's separate property. Wife maintained, however, that she paid the health insurance premiums while Husband paid the property insurance premiums, without contribution from either party toward their respective obligations.

the policy to the post office box set forth in the notice. Husband and Wife apparently reconciled their differences in 1999, but the reconciliation proved to be short-lived. The couple separated again in August 2001 and remained separated thereafter. Wife admitted that, following this latest separation, she never ascertained whether Husband continued to pay the insurance premiums and never contacted Mr. Brooks to request that he send the premium notices to her home address.

At some point, Wife undertook an effort to refinance a loan secured by the house and land. Mr. Brooks subsequently received a check from attorney Vaughan E. Reid, the attorney who apparently represented Wife in the refinancing of her loan. The check in the amount of $651.00 was issued on February 27, 2002, was payable to Farm Bureau, listed the couple's policy number, and noted that it was to cover "6 mos. hazard ins. premium." Mr. Brooks also stated that around this time, Wife requested that the insurance policy period be changed to run from February 22, 2002 until February 22, 2003, apparently due to the refinancing of the loan.

The premium for this new period totaled $1,334.00. Having already paid the premium for the prior policy period, Tennessee Farmers Mutual credited $202.00 toward the new policy period leaving $1,132.00 owed for the new policy period. Husband and Wife paid the remainder of the premium owed along with a $20.00 service fee in three installments. Tennessee Farmers Mutual applied the $651.00 check to the policy on March 13, 2002. Tennessee Farmers Mutual also applied a payment of $157.50 on August 26, 2002 and a payment of $343.50 on November 27, 2002 to the policy as well. According to Mr. Brooks, the $651.00 check was not applied to coverage of the residence alone but was applied toward the premium on the policy as a whole, which included coverage for Husband's farming operation. In any event, the renewed policy was set to expire at 12:01 a.m. on February 22, 2003.

It appears that in December 2002, Wife undertook another effort to refinance the loan. As a result, Mr. Brooks received a fax from Prime Mortgage Services, LLC dated December 18, 2002, which stated that, as part of the mortgage closing process, the mortgage company needed to verify insurance coverage on the house. The fax also requested that the mortgagee/lienholder on the insurance policy be changed to New Century Mortgage Corporation.[2] In turn, Mr. Brooks's office faxed a "Declarations Page" to the mortgage company as proof that Wife had insurance on the property. The "Declarations Page" listed Wife's mailing address as 921 Williams Street, reflected that coverage extended from February 22, 2002 to February 22, 2003, and stated that the annual premium would be $450.00. According to Mr. Brooks, he calculated the homeowner's insurance premium for the house alone, apparently after Husband expressed a desire to divide the policy, which he determined would be $450.00 for the next renewal period running from February 22, 2003 to February 22, 2004. Further, the document stated: "If this insurance policy is terminated, we will give you and the mortgagee or lienholder written notice in compliance with the applicable policy provisions or as required by law."

_____

[2] It appears as though Prime Mortgage Services, LLC acted as an agent on behalf of New Century Mortgage Corporation during the refinancing process.

Mr. Brooks's office also faxed a document to the mortgage company indicating that the mortgagee/lienholder had been changed, and the cover page contained the following handwritten notation:

> Sara,
>
> Any questions on this please call Randy — He plans to split policy on renewal — 2/22/02 and put Farm Equipment on separate policy — Policy is paid until renewal.

Wife subsequently admitted that, when she was refinancing the loan, she noticed that the "Declarations Page" sent by Mr. Brooks to the mortgage company indicated that coverage would expire on February 22, 2003.

On January 24, 2003, Tennessee Farmers Mutual mailed a "Statement of Insurance Premium Due" to Husband and Wife at P.O. Box 342, Newbern, Tennessee. The statement provided that a premium of $1,194.00 or a minimum payment of $304.50 would need to be paid to continue coverage for another year. On January 27, 2003, Tennessee Farmers Mutual mailed a "Renewal Certificate" to Husband and Wife at the same post office box, which provided that the renewal period would run from February 22, 2003 to February 22, 2004.

Husband subsequently admitted receiving both documents. After receiving these documents, Husband again approached Mr. Brooks to inquire about dividing the policy — one policy for his farming operation and the other for the house. Mr. Brooks provided Husband with a letter indicating that the policy could be divided, but Husband asked Mr. Brooks to forego changing the policy until he could speak with Wife. Mr. Brooks admitted that he knew Husband and Wife were experiencing marital difficulties at the time. Armed with the letter, Husband asked Wife if she would agree to divide the policy, with Wife assuming responsibility for paying premiums on an insurance policy covering only the house. According to Husband, Wife refused to divide the policy and stated that the payment of the insurance premiums was Husband's responsibility. Thereafter, Husband called Mr. Brooks and informed him that he would not be paying the insurance premium for the upcoming year and that he planned to let the policy expire. Husband apparently planned to move his farm equipment from the couples' land to his father's farm. In any event, neither Husband nor Wife asked Mr. Brooks to alter or modify the existing policy.

As of February 23, 2003, Tennessee Farmers Mutual alleged that it had not received any payment toward the premium needed to secure coverage for an additional year. On February 26, 2003, Tennessee Farmers Mutual sent a "Final Notice" to Husband and Wife at P.O. Box 342, Newbern, Tennessee. The notice informed the couple that their policy had expired as of February 22, 2003 for nonpayment of the renewal premium. The notice further provided: "To reinstate your policy with continuous coverage, your payment must be received by us by 03-08-2003 — otherwise, this policy will remain lapsed." Husband admitted to receiving this notice. Tennessee Farmers Mutual asserted that it never received a payment from either Husband or Wife prior to March 8,

2003. Mr. Brooks had a second conversation with Husband after the policy allegedly expired, during which he informed Husband that the policy had expired. According to Mr. Brooks, Husband stated that he was waiting on Wife to give him her portion of the premium owed. Husband asserted that, after he received the "Final Notice," he told Wife he did not intend to pay the insurance premiums. Conversely, Wife maintained that Husband never told her that he was going to stop paying the insurance premiums.

Husband returned to Mr. Brooks's office on April 17, 2003 and took out a new policy covering only his farming operation. Thereafter, Wife had an automobile accident and called Mr. Brooks to discuss her automobile coverage, which she maintained through Mr. Brooks under a separate policy. During the conversation, Mr. Brooks mentioned to Wife that the insurance policy covering the home had lapsed. Around March 10, 2003, Mr. Brooks had received a copy of a "Confirmation of Cancellation" from Tennessee Farmers Mutual. Mr. Brooks understood that a copy of the document was mailed to his office, the mortgagee, and the insured. The document stated that the insurance policy had been cancelled as of 12:01 a.m. on February 22, 2003 for nonpayment of the premium. Mr. Brooks apparently made the following notation on the March 2003 "Confirmation of Cancellation" after the April 2003 conversation with Wife: "Sally needs to pay $106, can't pay now."

Mr. Brooks recounted that Wife only needed to pay $106 to secure coverage on the house for the next quarter, supposedly excluding coverage for Husband's farming operation, but Wife stated that she could not afford to pay that amount. Wife denied every receiving such information from Mr. Brooks during their conversation. According to Wife, she called the main office of Tennessee Farmers Mutual in Columbia, Tennessee after her conversation with Mr. Brooks, and someone at the main office assured her that the policy premiums had been paid to provide coverage on the home from February 2003 until February 2004.

On May 4, 2003, the house occupied by Wife suffered extensive damage when a tornado moved through the area. After the tornado moved through the area, Wife stated that she called Husband about the damage, to which he responded: "I forgot to tell you, I canceled it in February." That same night, Mr. Brooks received a telephone call from Wife stating that the home had been damaged by the tornado. According to Mr. Brooks, he told Wife that if her premium had not been paid, then there would be no coverage on the house. He also assured Wife he would check the records at his office to verify the status of her account, but his subsequent research revealed that no premium had been paid to renew the policy. Thereafter, Tennessee Farmers Mutual refused to cover the damage to the home and Wife's resulting losses. Wife asserted that she called the main office of Tennessee Farmers Mutual several times after the tornado and was assured that the loss would be covered. She also admitted, however, that she was told during one conversation with the main office that her policy had not been renewed.

On August 22, 2003, Wife filed a declaratory judgment action and complaint for damages against Husband, Mr. Brooks, Tennessee Farmers Mutual, New Century Mortgage Corporation, and

Fairbanks Capital Corporation[3] in the Chancery Court of Dyer County. Therein, Wife stated that she fully intended to address the nonpayment of the insurance premium in her complaint for divorce, but the tornado damaged her home before she could file for divorce. Moreover, Wife denied ever receiving notice in writing that her policy was up for renewal or that it had been cancelled for nonpayment of the premium. Accordingly, she sought a declaratory judgment holding that the insurance policy was in full force and effect when the tornado damaged her home. In the alternative, Wife sought damages, presumably for breach of contract, for reimbursement in the amount of $89,000.00, the properties alleged fair market value, and $10,000.00, the expenses allegedly incurred by Wife in seeking temporary housing. The trial court subsequently allowed Wife to amend her complaint to seek damages to the limits allowed by the policy for the loss of the personal property contained in the house at the time of the tornado.

On May 3, 2004, the Chancery Court of Dyer County entered a final decree of divorce between Husband and Wife. The court ordered that Husband would be responsible for one-half of the indebtedness due on the original purchase of the parties' real property in Newbern, Tennessee; the house would remain Wife's separate property and that any insurance proceeds recovered would remain her separate property as well; Wife would receive a one-acre parcel on which the house is situated to be carved out of the larger parcel; and the remainder of the land owed by Husband and Wife as tenants by the entirety would be disposed of in accordance with the court's order.

On November 12, 2004, Mr. Brooks and Tennessee Farmers Mutual moved for summary judgment arguing that, as a matter of law, no coverage existed on the home on the date of the tornado and that Mr. Brooks had no duty to provide Wife with notice that her insurance policy had been cancelled. In support of the motion, they provided Mr. Brooks's affidavit; Mr. Brooks's deposition; Wife's deposition; the affidavit of Vickie Knight ("Ms. Knight"), Vice President of Property Underwriting for Tennessee Farmers Mutual; and numerous exhibits. Wife filed her response, which included her own affidavit, the affidavit of the local postmaster, her deposition, Mr. Brooks's deposition, Husband's deposition, and various exhibits. Thereafter, the parties presented numerous amended affidavits for the trial court's consideration. On August 31, 2005, the trial court entered an order granting the motion for summary judgment.[4] Wife timely filed her notice of appeal to this Court.

---

[3] In March of 2003, New Century Mortgage Company notified Wife that it sold her mortgage to Fairbanks Capital Corporation. Pursuant to an agreement between the parties, both mortgage companies were subsequently dismissed from the lawsuit with prejudice.

[4] We are cognizant of the fact that Wife sued not only Mr. Brooks but Husband as well. At oral argument, counsel for Wife acknowledged that the lawsuit against Husband remains unresolved. The trial court, however, certified the grant of summary judgment to Mr. Brooks and Tennessee Farmers Mutual as a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Thus, this Court can entertain the trial court's decision to grant summary judgment to the Appellees in this case. *See* TENN. R. APP. P. 3(a) (2005).

## II.
### ISSUE PRESENTED FOR REVIEW

Whether the trial court erred when it granted summary judgment to the Appellees by holding that, as a matter of law, the Appellant's homeowner's insurance policy was not in full force and effect for the term extending from February 22, 2003 to February 22, 2004, therefore, no coverage existed on May 4, 2003 when a tornado damaged the Appellant's home. For the reasons set forth more fully herein, we affirm in part and reverse in part the decision of the trial court.

## III.
### STANDARD OF REVIEW

"Summary judgments enable courts to conclude cases that can and should be resolved on dispositive legal issues." *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). Stated differently, "when the facts material to the application of a rule of law are undisputed, the application is a matter of law for the court since there is nothing to submit to the jury to resolve in favor of one party or the other." *Id.* Conversely, "when the credibility of witnesses is an integral part of the factual proof, or when evidence must be weighed, a trial is necessary because such issues are not appropriately resolved on the basis of affidavits." *Id.* at 216.

Appellate review of a trial court's grant of summary judgment presents a question of law, which we review de novo affording no presumption of correctness to the trial court's decision. *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000). We must independently review the record to ascertain whether the requirements for granting a motion for summary judgment have been met. *Church*, 39 S.W.3d at 157. In performing that role, we will apply the same familiar standards utilized by the trial court to evaluate a motion for summary judgment. *Prince v. St. Thomas Hosp.*, 945 S.W.2d 731, 733 (Tenn. Ct. App. 1996).

## IV.
### DISCUSSION

"Insurance, broadly defined, is a contract by which one party for a consideration assumes particular risks of the other party and promises to pay him or his nominee a certain ascertainable sum of money on a specified contingency." 44 C.J.S. *Insurance* § 2 (1993). "Insurance contracts are subject to the same rules of construction and enforcement as apply to contracts generally." *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990) (citing *Draper v. Great Am. Ins. Co.*, 458 S.W.2d 428, 432 (Tenn. 1970)).

The policy at issue in this case provides, in relevant part, as follows:
**WHEN COVERAGE APPLIES**

**Policy Period**

. . . .

If **we** offer to renew and **you** pay the premium on or before the expiration of the current policy period, the policy period will be any successive period thereafter for which **you** paid the renewal premium. The policy period begins and ends at 12:01 a.m. standard time at the **residence**.

. . . .

### GENERAL CONDITIONS APPLYING
### TO ALL SECTIONS OF THIS POLICY

. . . .

**Cancellation**

**Your** Right to Cancel

**You** may cancel this policy by giving **us** advance written notice of the date on which cancellation is to be effective.

**Our** Right to Cancel

**We** may cancel this policy by mailing notice of cancellation to **you** at the mailing address shown in the Declarations at least twenty (20) days prior to the effective date of cancellation. Proof of mailing will be sufficient proof of giving notice.

**Nonrenewal**

If **we** decide not to renew this policy, **we** will give notice of nonrenewal to **you** at the mailing address shown in the Declarations not less than twenty (20) days before the end of the policy period. Proof of mailing will be sufficient proof of giving notice. If **we** send a notice of nonrenewal, the coverages provided by this policy will end on the date and at the time stated in the notice whether or not a renewal statement or declaration has been mailed.

**Termination**

> If **we** offer to renew and **you** do not pay the renewal premium
> when due, this policy will automatically terminate at the end of the
> last policy period for which you have paid.

(emphasis in original).

### A.
### The Grant of Summary Judgment to Mr. Brooks

We begin by analyzing the grant of summary judgment to Mr. Brooks, the insurance agent. In regards to Mr. Brooks, Wife appears to allege that he breached a duty to inform her that the premiums on her insurance policy were not being paid or that he failed to provide her with notice that coverage had been terminated for non-payment of premiums. In her complaint, Wife requested "a judgment against . . . Randy Brooks d/b/a Farm Bureau Insurance as an employee and agent of Tennessee Farmers Mutual Insurance Company . . . on the theory of agency and respondent/superior." In his affidavit, Mr. Brooks stated: "I sell insurance for Tennessee Farmers Mutual Insurance Company and Tennessee Farmers Life Insurance as an independent contractor."

We previously have addressed the duty of an insurance agent under similar factual circumstances. In *Quintana v. Tennessee Farmers Mutual Insurance Company*, 774 S.W.2d 630, 631 (Tenn. Ct. App. 1989), the homeowners purchased an insurance policy from Tennessee Farmers Mutual, the same company at issue in this case, through their local Farm Bureau agent to secure insurance coverage for their home. In 1986, the homeowners decided to travel to Texas to visit their son. *Id.* On November 5, 1986, one of the homeowners, while at the local Farm Bureau office on other business, mentioned to his insurance agent that they would be leaving for Texas in a few days. *Id.* Unbeknownst to the homeowners or the agent, Tennessee Farmers Mutual had undertaken a review of the policy due to the frequency of claims filed by the homeowners in order to determine whether the company wished to continue to provide coverage. *Id.* On the same day that one of the homeowners visited the local agent, Tennessee Farmers Mutual drafted two letters informing the homeowners that their policy was being cancelled. *Id.* Tennessee Farmers Mutual sent one letter to the homeowners' home address on November 10, 1986, and the other letter was sent to the agent. *Id.*

Rather than having their mail forwarded, the homeowners had postal officials hold their mail while they were away. *Id.* at 631–32. The agent did not attempt to contact the homeowners to notify them of the cancellation. *Id.* at 632. When the homeowners returned home on December 30, 1986, they discovered that Tennessee Farmers Mutual had cancelled their insurance coverage. *Id.* In turn, they sued Tennessee Farmers Mutual alleging that the company failed to notify them of the policy's cancellation, presumably in accordance with the terms of the contract. *Id.* The trial court found that Tennessee Farmers Mutual did not provide the homeowners with effective notice, and the company appealed to this Court. *Id.* Regarding the homeowners' claim against Tennessee Farmers Mutual, we reversed the trial court's decision and held that, pursuant to the express terms of the policy, "Tennessee Farmers may effectively cancel its policy by mailing a notice of cancellation to the policyholder at the address shown in the declarations portion of the policy at least ten days prior to

the effective date of the cancellation.  The policy does not require that the insured receive the notice in order for the cancellation to be effective."  *Id.* at 633.

On appeal, the homeowners also alleged that "their long association with [the agent] gave rise to a duty on his part to notify them of the cancellation because he knew that they were out of town."  *Id.* at 633.  In addressing this argument, we stated:

> The [plaintiffs'] long business relationship with [the agent] did not require him to notify them of the policy's cancellation. In the absence of an agreement creating continuing responsibilities, an insurance agent's obligation to a client ends when the agent obtains insurance for the client.  Thus, an agent has no duty to inform a client of a policy's cancellation if the client knew or should have known of the cancellation by other means. . . . [The agent] had no express or implied agreement with the [homeowners] to contact them if Tennessee Farmers cancelled their insurance.  Therefore, he did not have a duty to try to contact the [homeowners] when he received his copies of the cancellation letters.

*Quintana v. Tenn. Farmers Mut. Ins. Co.*, 774 S.W.2d 630, 634 (Tenn. Ct. App. 1989) (citations omitted); *accord* 44 C.J.S. *Insurance* § 180, at 344 (1993) (stating that an independent insurance agent's duty to his client ends when he procures a policy for the client).

The insurance policy at issue, by its express terms, provides that it is a contract between Husband and Wife, the insured, and Tennessee Farmers Mutual, the insurer.  Wife offers no proof to dispute the fact that Mr. Brooks acted as an independent insurance agent in procuring the policy at issue.  Nor does Wife offer any evidence of an agreement between her and Mr. Brooks whereby Mr. Brooks agreed to provide her with notice that renewal premiums were due or that the premiums were not being paid.

Assuming arguendo that such an agreement did exist, there is ample evidence in the record demonstrating that Mr. Brooks did alert Wife to the fact that the policy was set to expire on February 22, 2003.  In her deposition, Wife testified as follows:

> Q.  And you understood that if you buy car insurance, house insurance, whatever it might be, you have coverage from a beginning point to some sort of ending point?
> A.  Yes, sir.
> Q.  And if you want to keep that insurance you pay the premium again?
> A.  Yes, sir.

Q.    And if you don't want to keep the insurance, you just don't have to pay the premium?

A.    Yes, sir.

Q.    And you understand that if the premium is not paid, then that policy will just lapse or expire?

A.    Yes, sir.

Q.    And on this document that your attorney has provided to me, and it's [sic] got "Declarations Page" at the top, it's got on here, effective date 2/22/2002, and then policy period of 12 months, and an expiration date of 2/22/2003?

A.    Yes, sir . . . .

          . . . .

Q.    You had seen that when you refinanced the home equity loan with Prime Mortgage?

A.    Yes, sir.

Q.    So did you know that that policy ended or expired in February of 2003?

A.    Well I didn't make note of it. I mean, [Husband] handled all of that.

Accordingly, we hold that the trial court did not err in granting summary judgment to Mr. Brooks.

### B.
### The Grant of Summary Judgment to Tennessee Farmers Mutual

Next, we turn to the grant of summary judgment to Tennessee Farmers Mutual. In its motion for summary judgment, Tennessee Farmers Mutual maintained that the policy at issue was set to expire at 12:01 a.m. on February 23, 2003 and that, despite the notices sent on January 24 and 27, 2003, it never received a premium payment to extend coverage beyond that date. It further stated that a "Final Notice" was sent on February 26, 2003, after the policy term ended, providing that coverage could be reinstated by payment of the premium by March 8, 2003. Tennessee Farmers Mutual asserted that no premium payment was received by March 8, 2003, therefore, the coverage set forth in the policy terminated. Tennessee Farmers Mutual acknowledges that it sent the notices to P.O. Box 342, Newbern, Tennessee, however, it offered the affidavit of Ms. Knight, the company's President of Property Underwriting, who stated that "[i]n 1998, the Davidsons notified Tennessee Farmers Mutual Insurance Company . . . [that] their new mailing address [was] Post Office Box 342, Newbern, Tennessee, 38059-0342." Further, Ms. Knight stated: "Insurance policy information is mailed to the insured at the address designated by the insured."

In opposition to the motion for summary judgment filed by Tennessee Farmers Mutual, Wife, in essence, took the position that genuine issues of material fact existed as to (1) whether she ever

received notice that the policy premiums were not paid on or after February 22, 2003, the ending date of the policy, and (2) whether the policy was not cancelled but was in fact renewed for another term by the payment of part or all of the premium due.

In her affidavit supplied in opposition to the motion, Wife stated in regards to the notice issue: "I have never had access to P.O. Box 342, Newbern, Tennessee which apparently is the PO Box belonging to my ex-husband Thomas Davidson." Further, she stated: "At no time did I contact either the agent, Randy Brooks . . . or the company itself . . . and notify them to change my address on the policy." Relying on the Declarations Page faxed by Mr. Brooks during the refinancing of her loan, Wife notes that the document listed her mailing address as 921 Williams Street, Newbern, Tennessee. She also provided the affidavit of the postmaster, who stated that P.O. Box 342, Newbern, Tennessee was issued to Husband and that Wife did not have access to this post office box.

Regarding her contention that the policy was renewed, Wife again pointed to the "Declarations Page," which provided that the annual premium due for coverage on her home was $450.00. She also referred to a "Renewal Certificate" she received, which she attached as an exhibit to her affidavit, indicating that coverage had been extended from February 22, 2003 to February 22, 2004. Wife did not state how she received the certificate, which is addressed to New Century Mortgage Corporation. As wife noted in her affidavit, however, the certificate did not state that coverage was contingent upon the payment of any premiums. To demonstrate that the premiums for this new period had been paid, Wife provided "a copy of the $651.00 premium check which was forwarded to Farm Bureau for coverage on the property located at 921 Williams Street, Newbern, Tennessee." Despite the fact that Mr. Brooks testified in his deposition that this amount was applied to the previous policy period, Wife pointed to the fact that the check, issued on February 27, 2002, stated that the check was for "6 mos. hazard ins. premium" on her house. Wife noted that this amount was more than the $450.00 subsequently quoted in the "Declarations Page" faxed by Mr. Brooks. Wife also pointed to the fact that one of the documents faxed by Mr. Brooks during her loan refinancing stated that he intended to "split" the policy. Finally, Wife stated that she had contacted Tennessee Farmers Mutual at their main office in Columbia, Tennessee, both before and after the tornado, and was told that the policy was in full force and effect.

In response, Ms. Knight submitted a supplemental affidavit contesting that the policy had been renewed, stating:

> The balance of the premium for the policy period between February 22, 2002 and February 23, 2003 along with a $20.00 service fee was paid in three (3) installments by the Davidsons. The first installment of the premium was in the amount of $651.00 and was paid on March 13, 2002. The second premium payment was in the amount of $157.50 and was paid on August 26, 2002. The third premium payment was made on November 27, 2002, and was in the amount of

$343.50. [These payments] were applied to the policy in effect for
the policy period from February 22, 2002 and February 22, 2003.

Mr. Brooks likewise filed a supplemental affidavit admitting that Husband, when asking about dividing the policy, asked him to calculate the premium for insurance on the house alone. Mr. Brooks also admitted that the Declarations Page faxed during the loan refinancing process reflected the amount he calculated for insurance on the home itself, or $450.00, but he stated that he was never asked to take further action toward dividing the policy.

In turn, Wife filed her supplemental affidavit. Therein, she noted that the check for $651.00 was issued on February 27, 2002, and Tennessee Farmers Mutual did not credit it to the policy running from February 22, 2002 to February 22, 2003 until March of 2002. Referring to the aforementioned language in the policy, she argued that this presented a disputed issue of fact as to whether the check, in fact, was appropriately credited. On appeal, Wife maintains that, since the policy requires that the renewal premium must be paid before the current term expires, all payments made after February 22, 2002 must be applied to the next renewal term. She also noted in her affidavit that, while she had no knowledge that the policy was going to be divided, the check was generated in the refinancing of a loan secured by the house, which evidenced an intent that the check be used to secure insurance on the house alone.

In response, Ms. Knight supplied another supplemental affidavit to address Wife's arguments. Therein, she stated that in March 2002, Husband and Wife requested that the policy period be changed to run from February 22, 2002 to February 22, 2003. As they were already into the policy period extending from April 2001 to April 2002, the premium was re-calculated with appropriate credits given, which she appears to assert would explain the application of the check for $651.00 in March 2002 toward the policy running from February 2002 to February 2003. Ms. Knight also stated that, in reviewing the billing records on the policy, they discovered that a payment of $358.50 had been credited to the policy at issue on April 16, 2004. An investigation, however, revealed that another customer inadvertently transposed their policy number on a check, which resulted in the amount being credited to the insurance policy at issue in this case. After rectifying the mistake, Ms. Knight stated that Tennessee Farmers Mutual received no payments from Husband or Wife on or after February 22, 2003 to renew coverage beyond that date.

First, we turn to the issue of notice. The policy sets forth three instances where coverage may come to an end: (1) Cancellation, (2) Nonrenewal, and (3) Termination. The provisions discussing Cancellation and Nonrenewal expressly state that Tennessee Farmers Mutual will provide the insured with written notice of its intent to cancel or forego renewal of the policy at the address set forth in the policy declarations. In her brief, Wife argues that there is a genuine issue of material fact regarding whether she received notice — presumably that the policy was no longer in effect — since Tennessee Farmers Mutual never sent notices to her home address listed on the "Declarations Page" faxed to her mortgage lender. Wife, however, overlooks the express provision in the policy governing Termination, which provides: "If we offer to renew and you do not pay the renewal

premium when due, this policy will *automatically terminate* at the end of the last policy period for which you have paid." (emphasis added).

When an insurer seeks to establish that coverage is no longer provided under a policy, it "must prove that it complied strictly with the policy's requirements," particularly when it invokes the policy's cancellation provisions. *Quintana v. Tenn. Farmers Mut. Ins. Co.*, 774 S.W.2d 630, 633 (Tenn. Ct. App. 1989) (citing *State Auto. Mut. Ins. Co. v. Lloyd*, 393 S.W.2d 17, 26 (Tenn Ct. App. 1965)). "Strict compliance is required so that the insured will have time to obtain other insurance or protection." *Blurton v. Grange Ins. & Cas. Co.*, 159 S.W.3d 1, 8 (Tenn. Ct. App. 2004) (citing *Jefferson Ins. Co. of N.Y. v. Curle*, 771 S.W.2d 424, 425–26 (Tenn. Ct. App. 1989)). In the instant case, Tennessee Farmers Mutual did not seek to invoke the policies Cancellation or Nonrenewal provisions. Instead, it relies on the Termination provision, which provides that coverage automatically terminates if the renewal premium is not paid.

Nothing in the Termination provision required Tennessee Farmers Mutual to mail notice to either Husband or Wife alerting them to the fact that the renewal premium had not been paid, thereby resulting in a loss of coverage. Even if it had, Wife, as we previously noted, testified in her deposition that she received notice that the policy was set to expire on February 22, 2003. Regarding insurance contracts, we have stated:

> The courts should not favor either party if the policy's language is unambiguous and free from doubt, and should enforce unambiguous policies as written. The courts are likewise not free to rewrite an insurance policy simply because they do not favor its terms. In the absence of fraud, overreaching, or unconscionability, the courts must give effect to a policy if its langauge is clear and its intent certain.

*Quintana*, 774 S.W.2d at 632 (citations omitted). Accordingly, we hold that Wife was not entitled to notice that the renewal premium had not been paid.

Next, we turn to the renewal of the policy. Much confusion was generated by changes in the policy at the time Wife first refinanced the loan secured by the house. Adding to this confusion is the fact that, during the parties separation but prior to their divorce, Husband inquired about dividing the policy. We hold that the proof presented by Wife in response to the motion for summary judgment filed by Tennessee Farmers Mutual creates a genuine issue of material fact as to whether a policy of insurance covered Wife's house at the time it suffered damage by the tornado.

Tennessee Farmers Mutual initially supplied an insurance policy covering the house and Husband's farming operation, which provided coverage from April 2001 to April 2002. In August 2001, Husband and Wife separated and remained separated thereafter. After their latest separation, Husband began to inquire if Mr. Brooks could divide the insurance policy. During Wife's first attempt to refinance her loan, a check dated February 27, 2002 in the amount of $651.00 was sent to Mr. Brooks for "6 mos. hazard ins. premium" in conjunction with the closing on Wife's loan

secured by the house. Around February or March of 2002, Tennessee Farmers Mutual received a request to change the policy period to run from February 22, 2002 to February 23, 2003, apparently in relation to Wife's efforts to refinance a loan. Tennessee Farmers Mutual attempted to demonstrate that the $651.00 check and other premiums paid in 2002 were applied to the original policy running from February 22, 2002 to February 22, 2003. Wife argued in response that Tennessee Farmers Mutual improperly credited these payments. It appears that Wife is attempting to establish that she intended to secure a policy of insurance on the house alone (i.e. the $651.00 check was only intended to secure coverage on the house, not on the house and Husband's farming operation). Moreover, in December 2002, Wife once again decided to refinance the loan secured by the house. Mr. Brooks faxed a document to the mortgage lender informing Wife that he intended to divide the policy and put Husband's farming operation on a separate policy. This document was accompanied by a "Declarations Page" stating that the annual premium on insurance for the house was $450.00, which Mr. Brooks conceded was the figure he arrived at when calculating a divided premium at Husband's request.

Wife also offered evidence in response to the motion for summary judgment which tended to support her assertion that coverage existed on the date of the tornado. Wife alleged that, both before and after the tornado damaged her home, she called the main office of Tennessee Farmers Mutual and was assured, despite Mr. Brooks's assertions to the contrary, that her policy was in full force and effect.[5] Wife also produced a copy of a "Renewal Certificate" issued by the company indicating that coverage had been extended from February 22, 2003 to February 22, 2004, which would include the date of the damage to her home caused by the tornado.

Resolving this issue will require the weighing of facts and the assessment of the credibility of witnesses, both of which are not appropriately handled through the summary judgment process. *See Byrd v. Hall*, 847 S.W.2d 208, 216 (Tenn. 1993). Accordingly, we hold that, based on the aforementioned facts, a genuine issue of material fact exists as to whether coverage existed on the date of the tornado that damaged Wife's home. Thus, we reverse the trial court's grant of summary judgment to Tennessee Farmers Mutual and remand this case to the trial court for further proceedings on this issue.

---

[5] On appeal, Wife argues, in the alternative, that Tennessee Farmers Mutual should be equitably estopped from denying coverage in light of the statements made by personnel at the company's main office. After reviewing the record, we do not find any instance where Wife raised this issue with the trial court. The doctrine of equitable estoppel requires the party seeking to invoke the doctrine to prove certain elements. *See Bill Brown Constr. Co., Inc. v. Glens Falls Ins. Co.*, 818 S.W.2d 1, 4–5 (Tenn. 1991); *Robinson v. Tenn. Farmers Mut. Ins. Co.*, 857 S.W.2d 559, 563 (Tenn. Ct. App. 1993). It is well settled that "issues not raised in the trial court cannot be raised for the first time on appeal." *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991).

On remand, Wife is free to raise this theory with the trial court in the appropriate manner. For our purposes here, however, we must take these alleged statements to be true and consider them collectively as one fact that, when coupled with others, tends to create a genuine issue of fact as to whether coverage existed on the date of the damage to Wife's home.

## V.
### CONCLUSION

We hold that the trial court did not err when it granted summary judgment to the Appellee, Randy Brooks d/b/a Farm Bureau Insurance. Further, we hold that the trial court erred when it granted summary judgment to Appellee, Tennessee Farmers Mutual Insurance Company, since a genuine issue of material fact exists as to whether insurance coverage existed on the date of the injury complained of in this lawsuit. Accordingly, we remand this case to the trial court for further proceedings on that issue. Costs of this appeal are to be taxed one-half the Appellant, Sara Jane Davidson, and her surety, and one-half to the Appellee, Tennessee Farmers Mutual Insurance Company for which execution, if necessary, may issue.

_____
ALAN E. HIGHERS, JUDGE